**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY AT NEWARK**

| | |
|---|---|
| JORGE MATUTE and DORIS MATUTE, individually and on behalf of all those similarly situated,<br><br>   Plaintiffs,<br><br>   v<br><br>AA ACTION COLLECTION CO, INC.; JAMES BENDER, ESQ.; and TODD BANK; individually and in his official capacity; and JOHN DOES 2-10,<br><br>   Defendants, Counterclaimants<br><br>   and<br><br>AA ACTION COLLECTION CO, INC., a New Jersey Corporation; JAMES BENDER, ESQ.; TODD BANKS; individually and on behalf of all others similarly situated,<br><br>   Third-Party Plaintiffs<br><br>   v<br><br>PHILIP D. STERN, ESQ.; ANDREW T. THOMASSON, ESQ.; and STERN, THOMASSON, LLC;<br><br>   Third-Party Defendants. | Case No. 2:16-cv-08863 (WJW-CLW)<br><br><br>Civil Action<br><br><br>ANSWER TO FIRST AMENDED COMPLAINT ADDING TODD BANK AS A PARTY,<br>with Affirmative Defenses;<br>COUNTERCLAIM;<br>and<br>THIRD-PARTY COMPLAINT under Federal and New Jersey RICO and Fraud<br><br><br>DEMAND FOR TRIAL BY JURY |

  Defendants, Counterclaimants, and Third-Party Plaintiffs AA Action Collection Co., Inc. (AA); James Bender, Esq. (Bender); and Todd Banks (Banks); say:

**ANSWER**

  1.  Paragraph 1 is denied. Rather than Defendants having violated anything;

which allegations are denied; it is Plaintiffs Jorge Matute (JMatute) and Doris Matute (DMatute), collectively Matute, who have been induced or are being misrepresented into participating in an attempt by their Attorneys Philip D. Stern, Esq. (Stern) and Andrew Thomasson, Esq. (Thomasson), collectively STLLC, to serve as Class Action Plaintiffs and invalid Class Action Representatives in order to support and participate in the implementation by their Attorneys of a RICO Enterprise directed at defrauding Defendants and others.

2. Paragraph 2 is admitted.

3. Defendants lack information sufficient to form a belief as to Paragraph 3.

4. Paragraph 4 is admitted.

5. Defendants lack information sufficient to form a belief as to Paragraph 5.

6. Defendants lack information sufficient to form a belief as to Paragraph 6.

7. Paragraph 7 is admitted.

8. Paragraph 8 is admitted.

9. Paragraph 9 is admitted.

10. Paragraph 10 is admitted.

11. Paragraph 11 is irrelevant and "Todd Banks" is the correct name of "BANK".

12. Paragraph 12 is denied.  Todd Banks resides in Millburn Township, N.J.

13. Paragraph 13 is denied.  Todd Banks is a principal of ACTION.

14. Paragraph 14 is denied.

15. Paragraph 15 is denied.

16. Paragraph 16 is denied as irrelevant.

17. Paragraph 17 is denied.

18.     Paragraph 18 is neither admitted nor denied because jurisdiction is a question of law.

19.     Paragraph 19 is neither admitted nor denied because jurisdiction is a question of law.

20.     Paragraph 20 is denied because it attempts to set forth "legal bases" as factual allegations.  Further, the "legal bases" are clearly incorrect.

21.     Paragraph 21 is denied.

22.     Paragraph 22 is denied.

23.     Paragraph 23 is denied.

24.     Paragraph 24 is denied.

25.     Paragraph 25 is denied.

26.     Paragraph 26 is denied.

27.     Paragraph 27 is denied.

28.     Paragraph 28 is denied.

29.     Paragraph 29 is admitted.

30.     Paragraph 30 is denied.

31.     Paragraph 31 is denied.

32.     Paragraph 32 is neither admitted nor denied.

33.     Paragraph 33 is admitted.

34.     Paragraph 34 is denied.

35.     Paragraph 35 is denied.

36.     Paragraph 36 is neither admitted nor denied.

37.     Paragraph 37 is admitted.

38.     Paragraph 38 is denied.

39.     Paragraph 39 is admitted.

40.     Paragraph 40 is denied.

41.     Paragraph 41 is denied.

42.     Paragraph 42 is neither admitted nor denied.

43.     Paragraph 43 is denied.

44.     Paragraph 44 is denied.

45.     Paragraph 45 is denied.

46.     Paragraph 46 is denied.

47.     Paragraph 47 is admitted.

48.     Paragraph 48 is denied.

49.     Paragraph 49 is admitted.

50.     Paragraph 50 is denied.

51.     Paragraph 51 is denied.

52.     Paragraph 52 is neither admitted nor denied.

53.     Paragraph 53 is admitted.

54.     Paragraph 54 is denied.

55.     Paragraph 55 is admitted.

56.     Paragraph 56 is denied.

57.     Paragraph 57 is denied.

58.     Paragraph 58 is neither admitted nor denied.

59.     Paragraph 59 is denied.

60.     Paragraph 60 is admitted.

61.     Paragraph 61 is admitted.

62.     Paragraph 62 is admitted.

63.     Paragraph 63 is admitted.

64.     Paragraph 64 is neither admitted nor denied.

65.     Paragraph 65 is neither admitted nor denied.

66.     Paragraph 66 is neither admitted nor denied.

67.     Paragraph 67 is neither admitted nor denied.

68.     Paragraph 68 is neither admitted nor denied.

69.     Paragraph 69 is neither admitted nor denied.

70.     Paragraph 70 is neither admitted nor denied.

71.     Paragraph 71 is neither admitted nor denied.

72.     Paragraph 72 is admitted.

73.     Paragraph 73 is neither admitted nor denied.

74.     Paragraph 74 is denied.

75.     Paragraph 75 is denied.

76.     Paragraph 76 is denied.

77.     Paragraph 77 is neither admitted nor denied.

78.     Paragraph 78 is neither admitted nor denied.

79.     Paragraph 79 is neither admitted nor denied.

80.     Paragraph 80 is denied.

81.     Paragraph 81 is denied.

82.     Paragraph 82 is denied.

83.     Paragraph 83 is neither admitted nor denied.

84.     Paragraph 84 is denied.

85.     Paragraph 85 is denied.

86.     Paragraph 86 is denied.

87.     Paragraph 87 is denied.

88.     Paragraph 88 is denied.

89.     Paragraph 89 is denied.

90.     Paragraph 90 is denied.

91.     Paragraph 91 is denied.

92.     Paragraph 92 is denied.

93.     Paragraph 93 is denied.

94.     Paragraph 94 is denied.

**AFFIRMATIVE DEFENSES**

95.     In accordance with the factual allegations set forth below; Defendants assert the Affirmative Defenses of: A) Accord and Satisfaction; B) Estoppel; C) Fraud; D) Illegality; E) Res Judicata.

**COUNTERCLAIM**

Defendants - Counterclaimants and Third Party Plaintiffs, AA, Bender, and Banks; by way of Counterclaim, say:

OVERVIEW

96.     From the date of the first communication by any of the Defendants seeking some payment for satisfactory dental work for which Matute had paid nothing; Matute and their attorneys, STLLC, have been implementing a fraudulent RICO Enterprise Plan

(Plan) designed to extort cash from Defendants and Third Party Plaintiffs, as further detailed in the Third Party Complaint below.

The first element in the Plan was Matute subscribing to STLLC's web site offer to extract $1,000 on Matute's behalf from Defendants as a supposed penalty for imagined statutory violations; even though Matute had suffered no actual damages from Defendants' efforts and had by-passed an almost certain opportunity to minimize their dental bill with a direct telephone call.

The Plan called for STLLC to pretend to represent Matute in their collection matter; while using the occasion to manoeuver Matute into becoming a putative Class Action Representative in a Federal Class Action, the end-point of which was to extort attorney's fees from Defendants.

To date, the Plan has proceeded with STLLC expending an attorney's-day in the New Jersey Special Civil Part – Small Claims.  Instead of calling Bender on behalf of Matute and settling the matter, Stern, knowing that Matute's Dentist would not appear and spend a day in Small Claims Court to obtain a $2,000 +/- judgment; refused to effectively mediate and maneuvered the Court and Bender into a dismissal with prejudice.  Completion of the Plan in respect to Matute and Defendants (without Banks) was to have been Stern extorting $22,500 from Defendants to settle this case.

Further, Stern, in an illustration of the egregiously reprehensible behavior involved in his prosecution of the RICO Plan detailed in the Third Party Complaint set forth below:

1) agreed, ostensibly on behalf of Matute and the class they represented, to reasonably settle Case No. 2:16-cv-08863 for AA and its attorney, Bender, through a

mutually respected eminent third party attorney, and to provide ample time to answer if a settlement could not be reached; 2) rejected an offer of $5,000 and demanded $22,500 on the supposed ground that he, Stern, could not take less because it was his partner's matter; and 3) filed an application for the entry of default prior to the last day for the filing of a responsive pleading under the Rules, which allow a Party, "Todd Bank" (properly Todd Banks), newly named as a Party, 21 days within which to respond. Todd Bank or Banks has not even been formally served with process in this matter, so that his 21 days to answer under the Rules have not yet begun to run. Moreover, even if he be deemed to have been served on the same day the first pleading naming him (Document 9 captioned First Amended Complaint) was filed, February 14, 2017; his time to respond does not expire until March 6, 2017, days after the filing hereof.

FIRST COUNT
MATUTE'S CULPABILITY AS A RICO PLAN PARTICIPANT IN RESPECT TO
DEFENDANTS

96.    Paragraphs 1 through 96 are repeated.

97.    Matute intentionally and culpably participated in the operation of the Plan in respect to Defendants.

98.    Defendants have been financially and emotionally damaged by Matute's actions in the intentional implementation of the Plan.

WHEREFORE, Defendants demand joint and several judgment against Matute for:    a)    Damages,

    b)    Punitive damages,

    c)    Attorney's fees,

    d)    Interest,

e)   Costs, and

f)   Such other and further relief as may be equitable and just.

DEMAND FOR TRIAL BY JURY

Defendants demand a trial by jury as to all issues.

CERTIFICATION AS TO RELATED PENDING MATTERS

The undersigned hereby certifies on behalf of Defendants that to the best of his knowledge, information and belief, there are no other pending actions or class actions related to the pending matter in any court, and there are no related pending arbitration or administrative proceedings; except Winters, et al v Jones, et al – New Jersey Federal District Court Case No. 2:16-cv-09020 (JMV-JBC).

DESIGNATION OF TRIAL ATTORNEY

David M. Hoffman, Esq., is hereby designated  as  Trial Attorney.

Dated: March 3, 2017                     LAW OFFICE OF DAVID M. HOFFMAN
                                         David M. Hoffman, Esq. (DH1611)
                                         28 Countryside Drive
                                         Basking Ridge, N.J.  07920 (908) 608-0333
                                         dhoffman@david-hoffman-esq.com

                                         By__s/David M. Hoffman_____
                                            David M. Hoffman
                                         Attorneys for Plaintiffs

**THIRD PARTY CLASS ACTION COMPLAINT (TP Complaint)**

Third Party Plaintiffs AA ACTION COLLECTION CO, INC., (AA) a New Jersey Corporation; JAMES BENDER, ESQ. (Bender); and TODD BANKS (Banks) collectively TP Plaintiffs; individually and on behalf of all others similarly situated, by way of Third Party Complaint against Third Party Defendants PHILIP D. STERN, ESQ.

9

(Stern); ANDREW T. THOMASSON, ESQ. (Thomasson); and STERN, THOMASSON, LLC (STLLC); collectively Stern Defendants, say:

## PARTIES

1.     AA  is  a  New Jersey Corporation located at 29 Columbia Turnpike, Suite 303, Florham Park, N.J. 07932, which operates as a collection agency representing primarily medical debts to local medical providers.

2.     Bender  is  a  New Jersey Attorney with offices at 29 Columbia Turnpike, Suite 302, Florham Park, N.J. 07932, who frequently represents AA and its clients.

3.     Banks resides in Millburn Township, New Jersey, and is a principal of and shareholder in AA.

## JURISDICTION

5.     The United States District Court for the District of New Jersey has Federal subject matter jurisdiction pursuant to 28 USCA §1331 and the invocation by Third Party Plaintiffs of 18 USCA §1961, et seq., the Federal RICO Statute; and has supplemental jurisdiction regarding the New Jersey RICO Statute, NJSA 2C:41-1, et seq., as well as regarding allegations of fraud, legal malpractice, and other torts pleaded herein.

## OVERVIEW

6.     Starting before 2013 and accelerating since, Stern Defendants have conducted the affairs of a RICO Enterprise described herein, and agreed that conspirators would do so, in violation of 18 USCA §1961, et seq., the Federal RICO Statute (RICO), and the similar New Jersey RICO Statute, NJSA 2C:41-1, et seq. (NJ RICO).

7.     A warning of the RICO Enterprise's existence and operation was published in the form of a precedential decision dated April 27, 2015 in the Southern District of New

York, <u>Gallego v Northland Group, Inc.</u>, 102 F.Supp.3d 506, (SDNY 2015); wherein Judge Alvin K. Hellerstein *sua sponte* rejected the proposed consensual class action settlement, proffered even before Northland filed an answer or responsive pleading, and opined that:

". . . the class members would receive 16.5 cents each, . . . Plaintiff's counsel (would) recover fees up to $35,000. . . . (and) certifying a class would do little more than turn NGI's settlement with Mr. Gallego into a general release of liability from all similarly situated plaintiffs at minimal extra cost while furthering a cottage industry among enterprising lawyers, class certification is denied."   <u>Gallego</u>, supra at 509 and 511.

"Cottage industry" is a euphemism for the Defendants' operation of the RICO Enterprise as alleged herein.  Attached as Exhibit A is Judge Hellerstein's decision in <u>Gallego</u>, the Second Circuit unreported affirmance and remand, and the Pacer generated Docket Sheet confirming the final dismissal.

8.      The Stern Defendants conducted the affairs of the RICO Enterprise and executed its Plan in violation of the Federal and New Jersey RICO Statutes, as well as commit torts, fraud, and legal malpractice; as follows:

A.      The Stern Defendants avoided Small Claims Courts or unprofitable immediate payment of nominal claims without attorney's fees, by filing sham putative class actions in Federal Court *en masse* on the theory that the vast majority of the relatively deep-pocket defendants (mostly debt collection companies) would view a quick settlement for under $100,000 as basically a nuisance claim; with the rare contested case only confirming to victim defendants the practical advisability of settling early on a class basis.  Attached as Exhibit B are individual PACER filing records in the N.J. District Court for Stern, presumably also covering Thomasson and STLLC.  TP Plaintiffs have found no Federal class actions filed by Stern, Thomasson, or STLLC where a class has

been certified other than as part of or as related to a settlement.  Notable is the inordinate proportion of cases opened, settled and closed within several months.

B.      The Stern Defendants search out, solicit, and develop professional Plaintiffs retained to pose as theoretical "least sophisticated consumers"; falsely imputing imaginary consequences and the requisite actual damages to those Plaintiffs when any actual damages are likely prevented by consultation with referring attorneys or Defendants.

C.      The Stern Defendants knowingly ignored the almost universal absence of actual damages and lack of typicality, while falsely alleging the existence of certifiable plaintiff classes; all the while necessarily knowing that the alleged classes had no practical chance of being certified if there was any critical examination by the Court or adversary counsel of the propriety of certification.

D.      The Stern Defendants settled the sham class actions while solely considering the class action attorneys' fees; without any consideration or concern for the quality or amount of the settlement's benefits provided to the alleged class.   The situation in *Gallego, supra*, is apparently typical.

E.      The Stern Defendants filed separate lawsuits on behalf of a single alleged class representative against each of several defendant victims, instead of filing a single lawsuit against the several defendant victims.

F.      The Stern  Defendants filed separate lawsuits on behalf of several alleged class representatives against a single defendant victim, instead of filing a single lawsuit including the several alleged class representatives against that single defendant victim and/or seeking some form of lasting relief from that single defendant.  Paragraphs 8E and

8F describe the unprofessional and improper practice of multiplying lawsuits to secure increased attorney's fees as opposed to reducing the number of lawsuits filed to increase individual client benefits and over-all efficiency.

9.      In the implementation of their RICO Plan, Defendants engage in tortious conduct and violate New Jersey Rule of Court 1:4-8, Frivolous Litigation; Rule of Professional Conduct (RPC) 3.1, Meritorious Claims; and RPC 3.3, Candor Toward the Tribunal.  The numerous Federal Class Action Lawsuits the Stern Defendants have filed within the past several years are typically without factual basis due to their sole named Plaintiff having suffered no actual damages, and are therefore frivolous by definition and in violation of Rule 1:4-8, RPC 3.1, and RPC 3.3.  Evidence of the Stern Defendants' joint participation in the RICO Enterprise is provided by their joint participation as co-Counsel in lawsuits filed to implement the RICO Enterprise's operating Plan or Scheme. The Stern Defendants' misrepresentations to the Court regarding the validity of their class action allegations are essential elements of their phony lawsuits and violate RPC 3.3.  The Stern Defendants' typical RICO *modus operandi* is to extract or develop illusory consumer protection violations affecting a single person who suffers no actual damages under Spokeo or its State Court equivalent, prevail upon or retain that person to serve as a class Plaintiff, and cast that person as a putative class representative in a Federal District Court lawsuit; all while fully aware that the putative class representative was not typical if only because of having consulted an attorney in respect to the alleged violation, fully aware that no actual damages had been suffered, and fully aware that the true and sole motivation for commencing the lawsuit was the potential recovery of class action attorney fees.   Even assuming that such scenario is missing a RICO qualifying

13

characteristic and/or does not include the *scienter* or *mens rea* element to qualify as a crime; it is at least negligent and constitutes legal malpractice in not meeting the Rule 1:4-8, RPC 3.1 and 3.3 requirements that all attorneys are required to observe; i.e. **not** filing frivolous litigation in violation of Rule 1:4-8, **not** filing claims and contentions lacking merit in violation of RPC 3.1, and **not** filing claims lacking in candor toward the tribunal in violation of RPC 3.3.

**FIRST COUNT**
**RICO SUBSTANTIVE COUNT**
**18 U.S.C. § 1962(c)**
**(Against All Defendants)**

10.    Paragraphs 1 through 9 are repeated and incorporated herein.

11.    The Stern Defendants listed herein are all "persons" capable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. §1961(3). The Stern Defendants listed herein have violated 18 U.S.C. §1962(c) by committing multiple acts implementing the RICO Plan described herein.

**The RICO Enterprise**

12.    Since about early 2013, the Stern Defendants and individuals serving in various capacities, such as experts, office personnel, and common plaintiffs, have associated in fact with each other so as to constitute an "Enterprise" within the meaning of 18 U.S.C. Sections 1961(4).[1] At all times relevant to this TP Complaint, the Enterprise was engaged in, and its activities affected, interstate commerce, as Enterprise participants included law firms who did business in interstate commerce, and the Enterprise

---

[1] We note that the core of what later became the "Enterprise" was apparently, from PACER records at Exhibit B, started by Stern and/or his law firm prior to 2013.

participants defrauded victim companies and attorneys who were located throughout the nation and did business in interstate commerce.

13.     The "association in fact" Enterprise implemented a plan to select as victims persons or entities providing services related to consumers, ascribe to the victims one or more statutory violations of consumer protection laws or regulations, and then file a class action lawsuit based on a totally imaginary class seeking relatively enormous minimum statutory damages and attorney's fees all the while ignoring the practical impossibility of appropriate class certification and usual total lack of actual damages constitutionally necessary for any recovery; whether or not a statutory violation of a form collection letter or contract could be specified.  The goals of the RICO Enterprise are to start and quickly settle multiple class actions, typically apparently securing a mid-five figure settlement within months of filing the action.  The Gallego matter, supra, would have been a prime example if the Court had simply approved the proposed settlement in the normal course; as appears to be the standard practice.  But for the Court's *sua sponte* analysis of the proposed settlement; Jeffrey Gallego, a professional plaintiff, would have produced an additional round of attorney's fees, as he did in the other duplicative suits filed on his behalf against cookie-cutter defendants.

14.     Each Stern Defendant, be it an individual attorney or a law firm entity, is distinct from an association-in-fact comprised of those individuals and law firm entities. The constituent members of the Enterprise functioned as a continuing unit and had a common purpose to work together to accomplish the goals of the Enterprise.  In this regard,   Stern, Thompsson, and STLLC; worked together and shared common professional plaintiffs, shared a common format for their pleadings, and followed the

same procedure in settling their lawsuits. and even held legal seminars together, *i.e.*, the Jones/Mann legal seminar previously referenced.

15.     The Stern Defendants' course of conduct in furtherance of their RICO Enterprise was implemented by their improperly filing a multiplicity of lawsuits; consistently violating the basic principles of the Entire Controversy Doctrine as well as New Jersey Rule of Court 1:4-8, the Frivolous Litigation rule; Rule of Professional Conduct (RPC) 3.1, Meritorious Claims; and RPC 3.3, Candor Toward the Tribunal. Even if, arguendo, in any lawsuit there are sufficient technical or actual damages necessary to sustain a class representative's claim; the enormously variable value of any damage(s) suffered by the vast majority of class members, and the enormously variable nature of that damage, would preclude the commonality, typicality, and desirability necessary for any class certification.  These class disqualifying characteristics make the class allegations a litigation ploy to obtain attorney's fees.  They significantly help to define the "cottage industry" described by Judge Hellerstein in *Gallego, supra*.  Initial pre-litigation discovery has revealed no class certifications other than those associated with a settlement; as was rejected *sua sponte* in <u>Gallego</u>, supra, where no significant notice, class payment distribution, or Multi-District proceedings were present.  This lack of class validation is apparent from an examination of the Federal Pacer database, where despite the commencement by the Stern Defendants of about two hundred Federal Class Actions and an as yet unknown number of State court actions since 2013; no class designations have been found to have flowed from fully litigated proceedings.  See Exhibits B attached hereto.

16.     The Enterprise's structure and organization exist separate from its predicate acts.  The Enterprise has the *Boyle v. United States,* 556 U.S. 938 (2009) structural features, providing its Participants with a common purpose, relationships among those associated with the enterprise, and longevity; all sufficient to enable the Enterprise associates-in-fact to pursue the Enterprise's purpose, as described herein.

17.     The purpose of the RICO Enterprise is to promote, enable and facilitate the filing of spurious class actions to collect class action attorney's fees.  This Plan or Scheme consists of: a) locating, collecting, and using collection letters and communications (and any other comparable documents) subject to the Federal Fair Debt Collection Practices Act (and/or other comparable Federal and State statutes) and soliciting the cooperation of their recipients; b) constructing unsubstantiated and theoretical damage scenarios alleging illusory class-wide statutory damages, usually invalid in any case due to the lack of any actual damages; c) filing class action lawsuits against the issuers of the collection letters or communications without any reasonable prospect of seeking or obtaining legitimate class certification (as opposed to pefunctory approval of the class structure in the context of a proposed uncontested settlement agreement); and d) settling the class action lawsuit(s) for mid-five or low-six figure attorneys' fees based on the understanding that almost all defendant victims would pay that amount rather than pay even more in fees to their attorneys to litigate, albeit quite likely successfully.  The RICO Enterprise's successful operational Scheme is transparent and documented as set forth in the Exhibits attached hereto.  The Plan's success has been driven by its purpose in which the Stern Defendant attorneys settle early in the litigation for as much as they can get and less than it would cost the Class Action Defendant

victims to defend through initial motions and certainly through certification proceedings and trial.  There are no apparent instances where class benefits were widely distributed or even where class certification was granted (other than via consensual settlement including provision for attorney's fees as proposed in Gallego, supra) and the class properly documented.

### The Section 1962(c) Violation

18.      From before 2013, and continuing up through the present time, the Stern Defendants, each of whom are persons associated with, or employed by the Enterprise, did knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(1) and § 1961(5); all in violation of 18 U.S.C. §1962(c).

19.      TP Plaintiffs allege that the Stern Defendants engaged in the alleged criminal activities to defraud victims of money or property, in violation of 18 U.S.C. §1343, by concealing material facts from victims to the effect that the lawsuits were merely a vehicle to extort a settlement from victims, including the TP Plaintiffs herein, resulting in loss of victims' property and monies.  The Stern Defendants also engaged in acts of obstruction of justice in violation of 18 U.S.C. §1503 and witness tampering in violation of 18 U.S.C. § 1512(b)(1) by operation of the RICO Plan.

20.      TP Plaintiffs allege that these activities constitute conduct and acts committed by and through commission of wire fraud, extortion, obstruction of justice, and witness tampering; indictable as 'racketeering activity" as that term is defined in 18 U.S.C. § 1961(1)(B).

## PATTERN OF RACKETEERING ACTIVITY

21.    TP Plaintiffs allege that the course of conduct engaged in by the Stern Defendants (also herein called the Plan or Scheme) is characterized by both "continuity" and "relatedness" in relation to the racketeering activity Scheme, thereby constituting a pattern of racketeering activity as that term is defined in 18 U.S.C. §1961(5).   The relatedness prong is present because the predicate acts have "similar purposes, results, participants, or methods of commission" as related to the affairs of the Enterprise.   All predicate acts had the same purpose of bringing sham lawsuits merely for the purpose of inducing a settlement and dismissing the action.    See Exhibit B.  The numerous lawsuits filed by the Stern Defendants closed relatively soon after opening; almost always resolved by settlement.  TP Plaintiffs allege that the continuity of the pattern of racketeering activity is closed-ended inasmuch as a series of related predicate offenses extended over at least four years (a substantial period of time), and carries the threat of continuing activity (open-ended continuity) because the filing of the sham lawsuits merely for the purpose of inducing a settlement with the overwhelming amount of recovery being retained by the Stern Defendants, is the "regular way" the Stern Defendants conducted the affairs of the Enterprise.

## CONDUCTING AFFAIRS OF THE ENTERPRISE

22.    The Stern Defendants participated in the "operation or management" of the Enterprise's affairs as each participated in finding the professional plaintiffs, preparing the lawsuits, and filing and litigating the lawsuits; which defrauded the innocent victim Defendants and obstructed and impeded the "due administration of justice" as described in 18 USC §1503.

## RACKETEERING ACTIVITY

23.     Within the District of New Jersey, and elsewhere, the Stern Defendants committed the following racketeering acts:

### Racketeering Acts Involving Wire Fraud

24.     From on or about the year 2013 and continuing through the date of this TP Complaint, each Stern Defendant committed multiple racketeering acts of wire fraud, as described with specificity in Exhibits B, resulting from the Defendants having devised, and intending to devise a scheme and artifice to defraud, for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and the concealment of material information from victims. The wirings consist of the filings in Federal Court via the internet, *i.e.*, through the ECF system, which are interstate wirings in furtherance of and in assistance to the execution of the fraudulent scheme, all in violation of 18 US.C. §1343.

25.     There are specific wirings for each Stern Defendant, each of which filed documents through the ECF system.

26.     As evidenced by the PACER filings attached as Exhibits B, each of the Stern Defendants electronically filed numerous documents in Federal District Court(s) in implementing the RICO Scheme; with each electronic filing involving collateral consequential use of the U.S. Mails.

### Racketeering Acts Involving Obstruction of Justice

27.     From on or about year 2013, through the date of this TP Complaint, each Stern Defendant committed multiple racketeering acts of obstruction of justice in violation of Title 18 U.S.C. §1503 by virtue of using corrupt plaintiffs to file lawsuits in Federal

Court primarily for the purpose of securing settlements inuring primarily for the benefit of the Stern Defendants.  In this regard, (1) there was the existence of a judicial proceeding; (2) the Stern Defendants knew of the pending proceeding; (3) the Stern Defendants acted corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice; and (4) the action of hiring professional plaintiffs and bringing the lawsuits to induce a settlement for their own benefit had the 'natural and probable effect' of interfering with the due administration of justice.

### Racketeering Acts Involving Witness Tampering

28.    From on or about year 2013, through the date of this TP Complaint, each Stern Defendant committed multiple racketeering acts of witness tampering in violation of Title 18 U.S.C. §1512(b)(1) and (b)(2) by corruptly persuading professional plaintiffs with intent to influence their testimony in an official proceeding, and withhold testimony in an official proceeding, all in violation of section 1512(b)(1) and (2).

### Racketeering Acts Involving Extortion

29.    From on or about 2013, through the date of this TP Complaint, each Stern Defendant committed multiple acts constituting indictable offenses under 18 U.S.C. § 1951, in that each Stern Defendant obtained and sought to obtain property from TP Plaintiffs, i.e., settlements of lawsuits, and conspired to do so, with TP Plaintiffs' consent induced by the wrongful use of fear of economic harm if such cases were not settled, as described above; and such activities of the Stern Defendants affected interstate commerce.

### SECOND COUNT

### RICO CONSPIRACY
### [RICO § 1962(d) Conspiracy]
### [Against All Defendants]

30.     TP Plaintiffs repeat and incorporate Paragraphs 1 through 29.

31.     Plaintiffs allege that commencing in 2013, and during and continuing at all times through at least the date of this TP Complaint,  the RICO Stern Defendants conspired to violate section 1962(c), i.e., each Stern Defendant agreed that a conspirator who was a member and operator and manager of the Enterprise  would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts indictable under 18 U.S.C. §§ 1343; 1503, 1512(b); and 1951, as more fully described in Count One.    TP Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain TP Plaintiffs' interests in business and/or property, and that such conspiratorial conduct violates RICO section 1962(d).

### THIRD COUNT

### NEW JERSEY RICO VIOLATION

32.     Plaintiffs repeat and incorporate Paragraphs 1 through 31.

33.     The Stern Defendants have violated NJSA 2C:41-2(c) which provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

34.     As described above in detail in Count One, and incorporated by reference into this Count, the Stern Defendants have violated NJSA 2C:41-2 c) by engaging in conduct defined as racketeering activity under Title 18 U.S.C. § 1961(1)(A), *i.e.*, multiple acts of wire fraud,   obstruction of justice, extortion, and witness tampering, which is racketeering activity under the New Jersey racketeering statute as described in NJSA

2C:41-1(2) (racketeering activity includes any conduct defined as "racketeering activity" in Title 18).

35.     In addition to perpetration of the above described of offenses during the course of operation of the RICO Enterprise, the Stern Defendants have engaged in the following acts which are described as racketeering activity under NJSA 2C:41-1, *i.e.*,

*Theft by Extortion*, NJSA 2C:20-5.   In this case the Stern Defendant attorneys purposely and unlawfully seek to extort statutory and class action attorney's fees by filing bogus and sham class actions subjecting the victims to impairment of their credit or business reputation or imposing costs of litigation exceeding the extortion amount.

*Theft by Deception*, NJSA 2C:20-4.  In this case the Stern Defendant attorneys purposely and unlawfully represented to the Court and Counsel that they are pursuing putative class actions in good faith when in fact the basic and sole motivation was prospective class action attorney's fees.

*Deceptive Business Practices*, NJSA 2C:21-7 (b) and (e)  -  The Stern Defendants violated:

(b)   by conspiring and cooperating with others to conduct the affairs of the Enterprise by making misrepresentations to the Courts, Attorneys, and others involved in the administration of the putative class actions regarding their viability; and

(e)     by conspiring and cooperating with others to conduct the affairs of the Enterprise by advertising and misrepresenting to the Courts, Attorneys, and others involved in the administration of the putative class actions that the class actions met acceptable standards for their commencement; when they did not.

## FOURTH COUNT

### Conspiracy to Violate N.J. RICO Statute

36.     Paragraphs 1 through 35  are repeated and incorporated herein.

37.     The Stern Defendants above have violated  NJSA 2C:41-2(d)   which provides that it is unlawful to conspire to violate NJSA 2C:41-2(c).

38.     As described above,  the RICO Stern Defendants agreed that a conspirator who was a member and operator and manager of the Enterprise would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts indictable under 18 U.S.C. §§ 1343, 1503, 1951, and 1512; and acts described under the N.J. RICO statute described in Count Three.    TP Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain TP Plaintiffs' interests in business and/or property, and that such conspiratorial conduct violates N.J. RICO section NJSA 2C:41-2(d).

### FIFTH COUNT

### FRAUD

39.     Paragraphs 1 through 38 are repeated and incorporated herein.

40.     The pleadings filed by the Stern Defendant attorneys related to the litigation referred to hereinabove, included representations of fact regarding those pleadings.  Certain of said representations of fact, such as the basic representation that said pleadings were filed in good faith and pursuant to the applicable Rules of Professional Conduct; were knowingly false.  General knowingly false representations necessarily included:

A)    That each named class action Plaintiff suffered actual damages and represented a universe of class members who had suffered comparable and typical actual damages; when in fact the named class action Plaintiff representative, typically, did not and could not have suffered any actual damage simply because of having consulted a Stern Defendant attorney early enough in the process to have avoided any possibility of suffering actual damage.

B)    That each named class action Plaintiff represented a universe of class members who had suffered from a comparable and typical statutory violation based on "the least sophisticated consumer" model; when in fact it was the Stern Defendant attorneys who imagined and constructed the alleged statutory violation.

C)    That each named class action Plaintiff represented a universe of class members who had suffered from a comparable and typical statutory violation based on "the least sophisticated consumer" model; when in fact the alleged statutory violation, often and typically, involved nothing more than a clerical error such as mistakenly addressing an envelope and triggering a single possible violation and maximum $1,000 fine.

D)    That the class action format was a legitimate attempt to obtain a reasonable remedy for the class members; when in fact, as in <u>Gallego</u>, *supra*, there was no possibility of any reasonable remedy.  In <u>Gallego</u>, in connection with the Court's *sua sponte* rejection of class certification; the Court posited the proposed class action member remedy as totalling $.165 (16.5 cents).  See Exhibit A.

41.    The Stern Defendant attorneys' knowingly false representations were made with the intention and knowledge that the Courts and litigation victims would rely

on them; resulting in significant burdens on the Courts and financial penalties to the victims; together with economic, personal, physical, and psychological damages.

## SIXTH  COUNT
## NEGLIGENCE

42.    Paragraphs 1 through 41 are repeated.

43.    The Stern Defendant attorneys participation in  the  implemention of the  RICO  Plan constituted negligence which damaged the class of TP Plaintiff victims economically, personally, physically, and psychologically.

## SEVENTH  COUNT
## LEGAL MALPRACTICE

44.    Paragraphs 1 through 43 are repeated.

45.    The Stern Defendant Attorneys' conducting of the affairs of the RICO Enterprise as described and alleged herein constitutes legal malpractice; violates the New Jersey and Federal RICO Statutes; violates Rule 1:4-8, RPC 3.1, and RPC 3.3; and has damaged the TP Plaintiff class economically, personally, physically, and psychologically.

## CLASS ALLEGATIONS

46.    The TP Plaintiff Class is defined as:

Defendants (Victims) in Class Actions filed on and after January 1, 2013 in the Federal and State Courts of New Jersey by the Stern Defendant Attorneys alleging various statutory violations of the Federal Fair Debt Collections Practices Act and other State and Federal consumer protection statutes; which putative Class Actions were closed and/or settled and closed without filed evidence of actual damages or litigated judicial consideration of class validity.

47.    Federal Rule of Civil Procedure 23 sets forth four prerequisites to the maintenance of a class action, which are:

**(1)  The class is so numerous that joinder of all members is impractical.**

It is impracticable to  join  all  the  Victims  because  their  number  makes  their

joiner impractical.  There are atleast over about one hundred Victims designated in the lists of Federal cases brought by the Stern Defendant attorneys pursuant to their Enterprise and Plan; all without including more difficult to index cases brought in the State courts of New Jersey.

**(2)   Questions of law or fact are common to the class.**

The common core allegations, and the common basic questions of law and fact, which are the common concerns of all the members of the class, relate to whether the Victims defined herein were victimized as alleged.  The Stern Defendant attorneys may have started some matters excluding one or more RICO Plan elements, thereby taking those matters out of the RICO Plan; which would exclude the defendants in those undiscovered matters from the class of Victims, with hundred(s) remaining.

**(3)   The claims of the named TP Plaintiffs are typical of the claims of the class they seek to represent.**

The Victims serving as Class Representatives, AA, Bender, and Banks, are typical of the other Victims in all the ways which make them all Defendants and Victims in the spurious Class Actions started against them in accordance with the RICO Plan described herein.

**(4)   AA, Bender, and Banks will fairly and adequately represent the interests of the class.**

AA, Bender, and Banks have diligently prosecuted the interests of the class they represent to date and have no interests adverse to the interests of other members of the class.  The interests of the class members coincide and do not conflict.

AA, Bender, and Banks attorneys are competent and will adequately represent the interests of the class.  They are experienced in complex litigation and the successful

representation of large classes in significant class actions.  AA, Bender, and Banks lead attorney, David M. Hoffman, Esq., to be complemented as appropriate, has over 50 years experience at the Bar and recently served as sole Lead co-Counsel in the Multi District Class Action against the Unum Group which resulted in about 800 Million Dollars, including fines and costs, being paid to over 10,000 members of the Plaintiff class.  See In re: UnumProvident Corp. ERISA Benefits Denial Actions, United States District Court for the Eastern District of Tennessee at Chattanooga, Case No. 1:03-md-1552.

48.     In addition to satisfying the Rule 4:32-1(a) prerequisites, Rule 4:32-1(b) requires the satisfaction of sub-section (1), (2), or (3).  While sub-sections (b)(1) and (b)(3) would also likely be satisfied; AA, Bender, and Banks clearly satisfy sub-section (b)(2).

### Rule 4:32(b)(2)

Certification pursuant to Rule 4:32(b)(2) is appropriate because the claims against AA, Bender, and Banks, and the other Victims, have similar characteristics, were made under analogous circumstances, and violate the Federal and New Jersey RICO Acts in basically the same way.  The relief sought on behalf of all members of the class will be similar and will provide appropriate relief for all members of the class.

### Proximate Cause and Damages

49.     The Stern Defendant Attorney's acts complained of herein have directly damaged AA, Bender, and Banks and all others similarly situated by damaging their business and reputation, and causing them to settle lawsuits based on false pretenses and misrepresentations, and concealment of material facts, and by causing severe emotional and economic damage and physical stress and damage.

WHEREFORE, AA, Bender, and Banks and all others similarly situated demand relief as follows:

1.  Money Damages assessed jointly and severally against the Stern Defendant attorneys (STLLC), to include at least the monies extorted by the Stern Defendant attorneys including their operating LLC by way of the settlement of sham lawsuits;

2.  Pre-Judgment Interest from the initial filing date of the within action;

3.  Statutory Treble Damages;

4.  Ancillary relief as may be deemed appropriate pursuant to
    18 USC §1961, et sq. and NJSA 2C:41-4(a);

5.  Attorney's fees and costs, including the costs of investigation and litigation; and

6.  Such other and further relief as may be deemed equitable and just.

DEMAND FOR TRIAL BY JURY

AA, Bender, and Banks, on their own behalf and on behalf of all others similarly situated, demand trial by jury as to all issues so triable.

DESIGNATION OF TRIAL ATTORNEY

David M. Hoffman, Esq., is hereby designated as Trial Attorney.

CERTIFICATION AS TO RELATED PENDING MATTERS

The undersigned hereby certifies on behalf of AA, Bender, and Banks that to the best of his knowledge, information and belief, there are no other pending actions or class actions related to the pending matter in any court, and there are no related pending arbitration or administrative proceedings; except that in addition to Winters and CSI v

Jones Wolf & Kapasi, LLC, et al, DNJ 2:16-cv-09020 (JMV-JBC); Napolitano v Regan

& Ragan, P.C., DNJ 3:15-cv-2732 (FLW-TJB); and Lin, etc. et al v AGM Windows, etc.

et al, Superior Court of New Jersey, Law Division, Morris County, Docket No. L-659-16,

which presently have pending motions to dismiss the pleadings; and in addition to the

matters specified herein, there are likely to be other matters similar to the matters

specified and/or referred to herein listed in the PACER database, or the not easily

available State Court data bases of New Jersey, New York, and Connecticut.   The

undersigned further certifies that he knows of no other parties which should be joined

except as discovery may disclose.   The undersigned acknowledges his continuing

obligation to amend this certification if there is a change in the facts set forth herein.


Dated: March 3, 2017                               LAW OFFICE OF DAVID M. HOFFMAN
                                                   David M. Hoffman, Esq. (DH1611)
                                                   28 Countryside Drive
                                                   Basking Ridge, N.J.   07920
                                                   (908) 608-0333
                                                   dhoffman@david-hoffman-esq.com

                                                   By__s/David M. Hoffman_____
                                                       David M. Hoffman
                                                   Attorneys for Plaintiffs