```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

MATUTE, et al.,                     .
                                    .
      Plaintiffs,                   .
                                    .  Case No. 16-cv-08863
vs.                                 .
                                    .  Newark, New Jersey
A.A. ACTION COLLECTION              .  March 27, 2017
COMPANY, INC., et al.,              .
                                    .
      Defendants.                   .
```

                    TRANSCRIPT OF TELECONFERENCE
               BEFORE THE HONORABLE CATHY L. WALDOR
                  UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:       ANDREW T. THOMASSON, ESQ.
                          Stern Thomasson LLP
                          150 Morris Avenue, 2nd Floor
                          Springfield, NJ 07081-1315
                          (973) 379-7500
                          andrew@sternthomasson.com

                          PHILIP D. STERN, ESQ.
                          Stern Thomasson LLP
                          150 Morris Avenue, 2nd Floor
                          Springfield, NJ 07081-1315
                          (973) 379-7500
                          philip@sternthomasson.com




Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ   07457
                          (973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
 1   (APPEARANCES continued)

 2   For the Defendants:     DAVID M. HOFFMAN, ESQ.
                             28 Countryside Drive
 3                           Basking Ridge, NJ 07920
                             (908) 608-0333
 4                           dhoffman@david-hoffman-esq.com

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  (Commencement of proceedings at 11:12 A.M.)

 2

 3            THE COURT:  Good morning.  Hold on.  We're going on
 4   the record.
 5            We are now on the record in M-a-t-u-t-e versus
 6   A.A. Action, 16-8863.  It's 11:14, March 27th.
 7            Good morning, folks.  I have a letter from
 8   Mr. Stern and a response from Mr. Hoffman.
 9            What -- what's going on, Mr. Stern?
10            MR. STERN:  Your Honor, simply put, it's -- we said
11   is Mr. Hoffman has communicated directly with our client.
12   Our clients total.  And had indicated he intends on
13   continuing to do so.
14            And our feeling is that that warrants obviously not
15   only him stopping, but warrants sanction, the most severest
16   of which is disqualification, unless he can show that there
17   is some reason that he should not be disqualified.
18            THE COURT:  Mr. Hoffman?
19            MR. HOFFMAN:  Your Honor, first of all, it's not
20   accurate to say that I contacted Mr. and Mrs. Matute.  The
21   only thing I did in respect to Mr. and Mrs. Matute is serve
22   them with filings, which they did not receive by electronic
23   means, because they're not registered as recipients.
24            THE COURT:  Well, how -- but wait a minute.
25            MR. HOFFMAN:  In respect to --
```

1              (Simultaneous conversation)

2                   THE COURT:  Where -- hold on -- Mr. Hoffman.

3                   MR. HOFFMAN:  Yes.

4                   THE COURT:  So aren't they represented by counsel,

5      though?

6                   MR. HOFFMAN:  They're not represented, apparently.

7      Mr. Stern may be asserting that he represents them, but in

8      that respect, it's clearly a conflict.  And that's one of the

9      basic problems I have with going forward with Mr. Stern, with

10     respect to which I have no objection, except that it should

11     only be done in a context where there's no apparent conflict

12     between Mr. Stern's representing Mr. Matute and representing

13     himself and also representing his LLC.

14                  THE COURT:  Well, somebody better explain this to

15     me.

16             (Simultaneous conversation)

17                  MR. HOFFMAN:  Your Honor, there was --

18                  THE COURT:  I'm -- I don't understand.

19                  MR. HOFFMAN:  Well, that's what I'm -- that's what

20     I'm about to do.

21                  THE COURT:  Okay.

22                  MR. HOFFMAN:  There was prior litigation that I

23     contend was fully completed, in which Mr. Stern represented

24     the Matutes against A.A. Collection.

25                  THE COURT:  Okay.

 1                MR. HOFFMAN:  That case was fully resolved and now
 2     amounts to res judicata.
 3                Mr. Stern inappropriately, in my view, filed
 4     another lawsuit, which is the one we're involved in now, on
 5     behalf of Mr. Matute, and the counterclaim and third-party
 6     complaint in that second matter, which is this one, creates a
 7     conflict between Mr. Stern personally and the Matutes.  And
 8     that conflict is apparent and very consequential.
 9                And Mr. Matute, in my view -- and if necessary,
10     I'll make a motion to disqualify Mr. Stern.  In my view, the
11     conflict is critical --
12                THE COURT:  What's the conflict?
13                MR. HOFFMAN:  -- and continuing.
14                THE COURT:  What's --
15                MR. HOFFMAN:  The conflict is that -- the conflict
16     is between Mr. Matute -- Mr. and Mrs. Matute, and Mr. Stern
17     and his partner and his LLC as coconspirators in an action
18     which -- in which, I don't believe, personally, that Matute
19     even knows is going on.  I don't even think Matute -- I don't
20     think Mr. Stern has a retainer agreement from Mr. Matute to
21     enable him to do what he's doing.
22                THE COURT:  But what -- I'm lost here --
23           (Simultaneous conversation)
24                MR. HOFFMAN:  And I think it's inappropriate --
25           (Simultaneous conversation)

```
 1                THE COURT:  Where's the conflict?
 2                MR. HOFFMAN:  -- of me -- beg your pardon?
 3                THE COURT:  I still don't -- what is the conflict?
 4    What's the conflict?  What you've told me is there's a prior
 5    lawsuit with the Matutes, and Mr. Stern represented them, and
 6    it was settled or disposed of.  And then this lawsuit was
 7    filed.
 8                So tell me where the conflict is.
 9                MR. HOFFMAN:  Okay, Your Honor.
10                The -- this lawsuit includes a third-party
11    complaint alleging that the Matutes and Mr. Stern and his
12    partner and LLC are engaging in a RICO scheme, which attempts
13    to extort funds from defendants, as part of the plan.
14                THE COURT:  Okay.  So it's because --
15         (Simultaneous conversation)
16                MR. HOFFMAN:  -- as part of the RICO plan.
17         (Simultaneous conversation)
18                THE COURT:  They're all --
19                MR. HOFFMAN:  So that --
20         (Simultaneous conversation)
21                THE COURT:  They're all.  Hold on.  Bless you.
22                They're all defendants in a third-party complaint
23    that you filed.
24                MR. HOFFMAN:  Yes.  Matute is a defendant as a
25    result of the counterclaim, and the Sterns are defendants as
```

1   a result of the third-party complaint.

2           THE COURT:  Okay.

3           MR. HOFFMAN:  And the scheme is evidenced in the
4   records.  There's no -- I think this case can go right to
5   Rule 12 or summary judgment because I don't think there are
6   any factual disputes out there.  I don't think there's any
7   need for discovery, except for Mr. Stern's insurance policy,
8   which he was bound to furnish and did not.

9           THE COURT:  Mr. Stern.

10          MR. STERN:  Yes, Your Honor.

11          THE COURT:  Do you have anything you want to
12  respond to?

13          MR. STERN:  Your Honor, I represent to the Court
14  that we -- myself, Mr. Thomasson, and our firm, which is not
15  an LLC, it's an LLP, but aside from that, that we are
16  satisfied that we have fulfilled all our obligations to our
17  clients, and we continue to do so.

18          And frankly, Mr. Hoffman and Mr. Hoffman's
19  clients -- and by the way, Your Honor, also on the phone
20  apparently is a Barry Sussman on behalf of -- is Mr. Hoffman?
21  Okay.  I -- his assertion?

22          MR. HOFFMAN:  He's my paralegal, Judge.

23          MR. STERN:  Okay.  The -- the -- what I was I going
24  to say?  They have no standing with respect to -- or -- as we
25  put in our letter.  It's the -- job to police our

1 relationship with our client.

2              I represent to the Court that I think that we have
3 done everything we are obligated to do and continue to be
4 obligated to do.  And certainly, there are no objections to
5 the Court -- to submitting whatever the Court -- if the Court
6 has any doubts, to submitting whatever the Court wants by way
7 of *in camera* inspection, but Mr. Hoffman's not entitled to,
8 number one, to communicate with our client.  His indication
9 is that he wants to have the Matutes directly tell him what
10 their decision is.  He wants to have direct communication
11 with him.

12              I disagree.  He actually has sent them copies of
13 those in this case, but he also included a cover letter, a
14 transmittal letter, which was not copied to us, which does
15 not appear of record.  So he's communicating with them, and
16 we have no idea what else he may be sending to them.

17              The whole point of the ethics rule is very clear.
18              THE COURT:  Yes.
19              MR. STERN:  There's only two circumstances where he
20 can communicate with our client:  Either if the Court says he
21 can, or we say he can.  And there's no excuse.

22              At this point, we -- neither I nor Mr. Thomasson
23 nor our firm are appearing *pro se*.  I received service of
24 process on the third-party complaint on the 17th, I think is
25 what it was, as well as on behalf of the firm.  They have yet

1  to serve Mr. Thomasson.
2          The -- the answer and counterclaim was filed on, I
3  think, March 3rd, it was a Friday.  The response would have
4  been due this past Friday, but we did a Rule 6.1 requesting,
5  which was granted by the clerk.  So our response is due -- I
6  believe that's April 7th.  And we're representing the
7  Matutes.  No one has appeared yet in this case on behalf of
8  myself or -- you know, with respect to the third-party
9  complaint.
10         MR. HOFFMAN:  May I be heard for a second,
11 Your Honor?
12         THE COURT:  Yes.
13         MR. HOFFMAN:  Just a couple of brief comments.  In
14 respect to the -- my transmission of the filings to the
15 Matutes, the only thing the cover letter said was "enclosed
16 is."
17         And I can furnish Mr. Stern with a copy of that
18 cover letter.
19         THE COURT:  But the fact --
20     (Simultaneous conversation)
21         MR. HOFFMAN:  Secondly --
22     (Simultaneous conversation)
23         THE COURT:  The fact of the matter is --
24         MR. HOFFMAN:  I beg your pardon?
25         THE COURT:  -- Mr. -- Mr. Stern represents the

 1 | Matutes.  Right?
 2 |         MR. HOFFMAN:  Well, in that respect, Judge, that
 3 | was going to be my second comment.  In that respect, I think
 4 | that's clearly improper.
 5 |         THE COURT:  But nobody's determined that.
 6 |         MR. HOFFMAN:  I have a problem -- I have -- can I
 7 | finish, Judge?
 8 |         In that respect, I have a personal problem in
 9 | dealing with Mr. Stern in a context where he represents
10 | Mr. Matute and is in conflict.  So that my alternative -- and
11 | I certainly agree that I shouldn't contact Mr. Matute in any
12 | substantive manner directly without Mr. Stern's permission,
13 | but I believe that I am -- I am -- I believe it's
14 | inappropriate for me to deal with Mr. Stern representing
15 | Matute in this matter and creating a conflict and a problem
16 | for me down the road, so that what I'm proposing that I do is
17 | I'll file a motion to disqualify Mr. Stern from representing
18 | Mr. Matute, and the issue will be of record, and it'll be
19 | disposed of.
20 |         THE COURT:  Okay.  Well, here's what's also --
21 |         MR. HOFFMAN:  I don't what else --
22 |    (Simultaneous conversation)
23 |         THE COURT:  Excuse me, Mr. Hoffman --
24 |    (Simultaneous conversation)
25 |         MR. HOFFMAN:  I don't know how else to handle this.

1               THE COURT:  Mr. Hoffman.  Mr. Stern has clients.
2    They are the Matutes.  You are not to communicate with them
3    in any way, shape, manner or form.
4               If you want to file a motion to disqualify, then
5    you're free to do so.  But until the Court adjudicates that
6    there's a conflict and anything inappropriate that's been
7    done, then the rules shall be followed.
8               MR. HOFFMAN:  I agree, Judge.
9               THE COURT:  Good.
10              MR. HOFFMAN:  The --
11              THE COURT:  Then you won't --
12              MR. HOFFMAN:  I would just point out, Your Honor --
13              THE COURT:  Yeah.
14              MR. HOFFMAN:  -- that the reason for this -- the
15   reason for this conference is the fact that Mr. Stern
16   insisted on setting up a pretrial settlement conference under
17   Rule 26.  And when he did so, I -- you know, I raised the
18   issue that's now before us, and I asked him to resolve it.
19   And he didn't send me the insurance policy that is requisite
20   and which would have solved the problem, because then his
21   insurance counsel would have entered an appearance, and the
22   problem would have gone away.
23              But he didn't do that.  He sent his letter to you,
24   Your Honor, and created the need for this conference.  So
25   that my -- my thinking now is that what I should do is

```
 1  certainly not contact the Matutes, which I have not done
 2  other than sending them copies of file documents, which they
 3  did not have.
 4          And --
 5          THE COURT:  How do you know they didn't have them?
 6          MR. HOFFMAN:  -- file my motion to disqualify.
 7          THE COURT:  How do you know they didn't have the
 8  documents?
 9          MR. HOFFMAN:  That's an assumption, Judge.
10          THE COURT:  Okay.  So --
11     (Simultaneous conversation)
12          MR. HOFFMAN:  Because they were not --
13     (Simultaneous conversation)
14          MR. HOFFMAN:  They were -- they didn't receive --
15  they didn't receive the documents through the ECF system.
16          THE COURT:  How do you know that?
17          MR. HOFFMAN:  And therefore, I sent -- because
18  they're not registered.
19          THE COURT:  How do you know that?
20          MR. STERN:  We are.
21          MR. HOFFMAN:  I didn't say you were not, Mr. Stern.
22  I said the Matutes.
23     (Simultaneous conversation)
24          MR. THOMASSON:  This is Andrew Thomasson.  We are
25  the --
```

 1                MR. HOFFMAN:  Yes.

 2                MR. THOMASSON:  -- paid attorneys.  They were sent

 3    the filings by virtue of the fact -- let me finish -- by

 4    virtue the fact that we --

 5                MR. HOFFMAN:  Sure --

 6         (Simultaneous conversation)

 7                MR. THOMASSON:  -- represent them, and we have an

 8    ethical obligation to provide those documents or any

 9    communications concerning this case to our clients.

10                And we fulfilled our obligation.

11                Your Honor, this has been very upsetting to my

12    clients.  This whole scenario.  And I don't know if

13    Mr. Hoffman has trouble with the truth or if he just prefers

14    to play fast and loose with it.  But when we began this call,

15    he told Your Honor's law clerk that Mr. Sussman is his

16    associate, implying he's a licensed lawyer.  He is not.

17                And, in fact, based on my research, it appears

18    Mr. Sussman may be a convicted felon, who is -- has long

19    history of abusing consumers to the point that the FTC had to

20    stand in and convict him of some crimes and fine him $2

21    million.

22                So this is who is wanting to communicate with our

23    clients.  And it's very upsetting to our clients when they

24    get communications from some other lawyer, and they don't

25    know what to do with it because they thought they were

1  represented by us.

2           And that's whole point of our letter. And I'm
3  sorry that I'm upset by this. But I am, because Mr. Hoffman
4  continues to tell half-truths. For example, saying that
5  we're obligated to send him a copy of our insurance policy.
6  We're not. All we're required to do under rule point 6 is
7  identify what documents, including insurance policies we may
8  have, that could be called on to satisfy a judgment. We're
9  not even to the point where anyone, much less Mr. Hoffman,
10 has served their Rule 26 disclosures.

11          And with respect to a settlement conference, we've
12 made no such request. All we've requested is the Rule 26(f)
13 planning conference.

14          THE COURT: Yes.

15          MR. THOMASSON: Which he refuses to engage in
16 unless he is permitted to communicate directly with our
17 client. And he's going to continue abusing our clients,
18 unless the Court, I think, intervenes here.

19          THE COURT: Well, I'm intervening. I've told --

20          MR. HOFFMAN: I'll make my motion to disqualify,
21 Judge.

22          THE COURT: Good. Mr. Hoffman, do not, under any
23 circumstances, have any contact with the Matutes.

24          MR. HOFFMAN: I have not, Judge, and I will not.

25          THE COURT: Well, it's a little funny that you sent

```
 1  them a copy of some pleadings, presuming they didn't have
 2  access to them and not knowing whether their attorneys had
 3  sent them.
 4            MR. HOFFMAN:  Well, it may be -- it may be curious,
 5  Judge, but -- and I object to Mr. Thomasson's ad hominum
 6  attacks, but anyway, the point is that Rule 12 -- I don't
 7  have the subsection in front of me, but there is a section in
 8  the rules which requires the transmission of the insurance
 9  policy.  And I'll put that in the form of a letter which I'll
10  attach to my motion to --
11       (Simultaneous conversation)
12            MR. THOMASSON:  It's point six -- 10 point A (5).
13            MR. HOFFMAN:  Okay.  Well, anyway, I'll make my
14  motion to disqualify and clarify the situation, Judge.
15            THE COURT:  Thank you.  You are to have no contact
16  with the Matutes, though.  You understand that.  Right?
17            MR. HOFFMAN:  I certainly do.
18            THE COURT:  Okay.  Perfect.  I'll look forward to
19  your motion.  Thank you.
20            UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.
21       (Conclusion of proceedings at 11:30 A.M.)
22
23
24
25
```

Case 2:16-cv-08863-CLW   Document 28   Filed 04/06/17   Page 16 of 16 PageID: 268

```
|Teleconference
|16-cv-08863, March 27, 2017                                            16
|Certification
```

| | |
|---|---|
| 1 | Certification |
| 2 | I, SARA L. KERN, Transcriptionist, do hereby certify |
| 3 | that the 16 pages contained herein constitute a full, true, |
| 4 | and accurate transcript from the official electronic |
| 5 | recording of the proceedings had in the above-entitled |
| 6 | matter; that research was performed on the spelling of proper |
| 7 | names and utilizing the information provided, but that in |
| 8 | many cases the spellings were educated guesses; that the |
| 9 | transcript was prepared by me or under my direction and was |
| 10 | done to the best of my skill and ability. |
| 11 | I further certify that I am in no way related to any of |
| 12 | the parties hereto nor am I in any way interested in the |
| 13 | outcome hereof. |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | S/ *Sara L. Kern*                              3rd of April, 2017 |
| 19 | Signature of Approved Transcriber                    Date |
| 20 | |
| 21 | |
| 22 | Sara L. Kern, CET**D-338<br>King Transcription Services<br>3 South Corporate Drive, Suite 203 |
| 23 | Riverdale, NJ  07457<br>(973) 237-6080 |
| 24 | |
| 25 | |