## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE MATUTE and DORIS MATUTE, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>*vs.*<br><br>A.A. ACTION COLLECTION CO., INC.; JAMES BENDER, ESQ.; TODD BANK; and JOHN DOES 1-10,<br><br>Defendants, Counterclaimants, and Third-Party Plaintiffs<br><br>*vs.*<br><br>PHILIP D. STERN, ESQ.; ANDREW T. THOMASSON, ESQ.; and STERN, THOMASSON, LLC,<br><br>Third-Party Defendants. | Case No.: 2:16-cv-08863-WHW-CLW |

## BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DISMISSING THE COUNTERCLAIM AND THIRD-PARTY COMPLAINT

## RETURNABLE: MAY 7, 2018
## [ORAL ARGUMENT REQUESTED]

Philip D. Stern, *on the Brief*
Andrew T. Thomasson, *on the Brief*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, New Jersey 07081-1315
(973) 379-7500

*Attorneys for Plaintiffs, Jorge Matute and Doris Matute, and Third-Party Defendants, Stern Thomasson LLP, Philip D. Stern, Esq. and Andrew T. Thomasson, Esq.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ..............................................................................1

PROCEDURAL HISTORY..................................................................2

STATEMENT OF FACTS ..................................................................4

STANDARD OF REVIEW .................................................................5

LEGAL ARGUMENTS.......................................................................7

    POINT I:   THERE ARE NO FACTS TO PROVE A PATTERN OF
    RACKETEERING ACTIVITY. ........................................................8

        A.    Elements of a Claim under 18 U.S.C. § 1962(c). ............................8

        B.    Elements of a Claim under N.J.S.A. 2C:41-2................................10

    POINT II:   THERE ARE NO FACTS TO PROVE FRAUD........................11

    POINT III:   THERE ARE NO FACTS TO PROVE NEGLIGENCE. ..........11

    POINT IV:   THERE ARE NO FACTS TO PROVE LEGAL
    MALPRACTICE.............................................................................12

    POINT V:   THERE ARE NO DAMAGES. ..................................................12

    POINT VI:   DEFENDANTS' AFFIRMATIVE CLAIMS ARE RIPE
    FOR FINAL ADJUDICATION.......................................................13

CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Allstate New Jersey Ins. Co. v. Lajara*,
    222 N.J. 129 (2015) ...................................................................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................5, 6

*Conklin v. Hannoch Weisman*,
    145 N.J. 395 (1996) ...................................................................................12

*Daubert v. NRA Grp., LLC*,
    861 F.3d 382 (3d Cir. 2017) ........................................................................6

*Davis v. Brickman Landscaping, Ltd.*,
    219 N.J. 395 (2014) ...................................................................................11

*F.T.C. v. Check Inv'rs, Inc.*,
    502 F.3d 159 (3d Cir. 2007) ......................................................................14

*FTC v. Check Inv'rs, Inc.*,
    No. 03-2115 (JWB), 2005 U.S. Dist. LEXIS 37199 (D.N.J. Jul. 18,
    2005) ..........................................................................................................15

*Gunter v. Ridgewood Energy Corp.*,
    32 F. Supp. 2d 166 (D.N.J. 1998)................................................................8

*Maldonado v. Ramirez,*
    757 F.2d 48 (3d Cir.1985) ...........................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................................6

*Olympic Junior, Inc. v. David Crystal, Inc.,*
    463 F.2d 1141 (3d Cir.1972) .......................................................................6

*State v. Ball*,
    141 N.J. 142 (1995) ...................................................................................10

*United States v. Sussman*,
    2015 U.S. Dist. LEXIS 2295; 2015 WL 132543 (D.N.J. Jan. 8, 2015) ........16

*Virgin Records Am., Inc. v. Trinidad*,
No. CIVA 06-5914 WHW, 2007 WL 4264543 (D.N.J. Dec. 3, 2007)...........6

*Winters v. Jones*,
Civil Action No. 16-9020, 2018 U.S. Dist. LEXIS 2645 (D.N.J. Jan.
8, 2018) ......................................................................................................18

*Winters v. Jones*,
Civil Action No. 16-9020, 2018 U.S. Dist. LEXIS 3061 (D.N.J. Jan.
8, 2018) ......................................................................................................14

## STATUTES

15 U.S.C. § 1692 ...........................................................................................17

18 U.S.C. § 1961 ..................................................................................... 7, 8, 9

18 U.S.C. § 1964 ...........................................................................................12

N.J.S.A. 2C:41-1 .......................................................................................7, 10

N.J.S.A. 2C:41-4 .................................................................................... 10, 12

## RULES

Fed. R. Civ. P. 56 .........................................................................................5, 6

## INTRODUCTION

This case began as a putative class action alleging Defendants' unlawful collection practices exemplified by their attempts to collect disputed dental bills from Mr. and Mrs. Matute—which they never owed—then suing them to collect those bills. This Motion, however, is not about the bills or Defendants' practices but rather the Counterclaim and Third-Party Complaint filed by Defendants' attorney, David M. Hoffman, Esq. and his convicted felon "paralegal", Barry Sussman.

Except for minor changes, the Third-Party Complaint is, to use Hoffman's words, a "virtual clone"[1] of, and "mirrored"[2], the complaint he and Sussman filed in the *Winters*[3] case—despite the lack of any common party or fact. Hoffman asserted spurious and outlandish claims for RICO violations, fraud, negligence, and malpractice against the Matutes' counsel and a Counterclaim against the Matutes as alleged co-conspirators.

For Judge Vazquez's reasons in *Winters*, Defendants' Affirmative Claims are dismissible. Indeed, Hoffman conceded under penalty of perjury the *Winters* decision should be "determinative of this case." But with discovery now closed, the lack of evidence is manifest and, therefore, Movants seek summary judgment.

---

[1] *Stern Decl.,* Ex. M (page 3, ¶1).

[2] *Stern Decl.,* Ex. N (page 1, §c).

[3] *Winters, et al. v. Jones, et al.*, Case 2:16-cv-09020-JMV-JBC (D.N.J.).

## PROCEDURAL HISTORY

On November 30, 2016, Plaintiffs filed their Class Action Complaint [Doc. 1] and, on February 14, 2017, filed a First Amended Class Action Complaint [Doc. 9].

On March 3, 2018, and again on March 4, 2018, Defendants filed an Answer, Counterclaim and Third-Party Complaint. [Docs. 13 & 14.]

On March 27, 2017, the Court conducted a hearing at which time it ordered Defendants' counsel, David M. Hoffman, to cease direct communications with Plaintiffs "in any way, shape, manner or form," and admonished him that "the rules shall be followed." [Doc. 25.]

A Rule 16 Conference was scheduled for April 25, 2017; however, Defendants' counsel refused to obey the Court's Order that he participate in a Rule 26(f) conference or in preparing a Rule 26(f) Planning Report. [Doc. 25.]

On April 7, 2017, Plaintiffs answered the Counterclaim. [Doc. 29.]

On June 13, 2017, the Court denied Defendants' motion to dismiss [Docs. 39 and 40.]

On July 11, 2017, the Court denied Defendants' Motion for Default Judgment. [Doc. 44.]

On July 24, 2017, the Court denied Defendants' Motion to Compel Third Parties' insurance information. [Doc. 45.]

On August 15, 2017, the Court denied Defendants' Motion to Disqualify Plaintiffs' Counsel. [Doc. 48.]

On July 18, 2017, this Court conducted a Rule 16 conference at which time the Court entered certain case deadlines including, *inter alia*, setting the Fact Discovery Deadline for February 17, 2018, and Motions to Amend Pleadings for December 18, 2017, [Doc. 46 at §I.1-3.] The Court subsequently extended the Discovery Deadline to March 17, 2018. [Doc. 57.]

The Third-Party Defendants answered the Third-Party Class Action Complaint on September 18, 2017. [Docs. 49, 50, and 51.]

## STATEMENT OF FACTS

Movants refer the Court to their separately filed Statement of Material Facts ("SOMF"), *Declaration of Philip D. Stern, Esq.*, and *Declaration of Andrew T. Thomasson, Esq.* Those documents establish that, despite discovery requests seeking facts supporting Defendants' Affirmative Claims (*i.e.* the Counterclaim and Third-Party Complaint), Defendants have produced none. Discovery is now closed.

There are no facts to meet Defendants' burden as to all necessary elements for any claim to establish either liability of damages. Therefore, the Counterclaim and Third-Party Complaint are ripe for summary disposition.

## STANDARD OF REVIEW

Defendants lack evidence sufficient to meet their burden of proof as to at least one essential element of each claim raised in their Counterclaim and Third-Party Complaint. Therefore, pursuant to Fed. R. Civ. P. 56, summary judgment should be granted.

By this Motion, Movants have demonstrated Defendants' Counterclaim and Third-Party Complaint consist of "factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In *Celotex*, the Supreme Court addressed granting summary judgment when the nonmoving party fails to demonstrate there is sufficient evidence to meet its burden of persuasion on each element of its claim.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, at 322-3. Movants here only bear "the initial responsibility of informing the district court of the basis for the motion but have no obligation to negate or disprove any element of Defendants' claims. *Celotex*, at 323.

In response, Defendants must do more than "simply show some metaphysical doubt as to the material facts." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts* showing that there is a genuine issue for trial." *Celotex¸* at 324 (emphasis added; internal quotation marks omitted).

"Such affidavits must be based 'on personal knowledge,' establish 'such facts which would be admissible,' and 'show affirmatively that the affiant is competent to testify in all matters stated therein.' '[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment.'" *Virgin Records Am., Inc. v. Trinidad*, No. CIVA 06-5914 WHW, 2007 WL 4264543, at *2 (D.N.J. Dec. 3, 2007) (quoting *Maldonado v. Ramirez,* 757 F.2d 48, 50 (3d Cir. 1985) and *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972).

## LEGAL ARGUMENTS

Movants are entitled to judgment as a matter of law dismissing Defendants' Counterclaim and Third-Party Complaint because, with discovery now closed, there is no evidence which can satisfy Defendants' burden to prove all necessary elements of any asserted claim. Defendants' seven-count Third-Party Complaint asserts claims under the Federal RICO statute (First and Second Counts), under the New Jersey RICO statute (Third and Fourth Claims), common law fraud (Fifth Count), common law negligence (Sixth Count), and common law legal malpractice (Seventh Count). Their single-count Counterclaim alleged Plaintiffs were co-conspirators in a RICO conspiracy.

Discovery reveals no evidence by which Defendants can meet their burden to prove any racketeering activity, or the pattern of such an activity, as required under the RICO statutes or any element of their common law claims. Moreover, there is no evidence as to damages for any of Defendants' claims. Therefore, summary judgment under Rule 56 should be granted in favor of Plaintiffs and Third-Party Defendants, and against the Defendants, dismissing with prejudice the Counterclaim and Third-Party Complaint.

**POINT I:     THERE ARE NO FACTS TO PROVE A PATTERN OF RACKETEERING ACTIVITY.**

Defendants assert claims for relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* and the New Jersey analog, N.J.S.A. 2C:41-1 *et seq.* Both statutes enumerate crimes which constitute "racketeering activity" and require a "pattern" of such activity (*i.e.*, at least two predicate acts). There is no evidence of any racketeering activity let alone a pattern of one. Therefore, the Federal and New Jersey RICO claims should be dismissed.

### A.    *Elements of a Claim under 18 U.S.C. § 1962(c).*

To succeed on the First Count of their Third-Party Complaint, Defendants must prove: (1) the conducting of (2) an enterprise (3) through a pattern (4) of racketeering activity. *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To have standing, Defendants must also suffer causally-related damages to their business or property. *Id.*

"Enterprise" is broadly defined. There is no dispute the Matutes, Stern, and Thomasson are each an "individual" and Stern Thomasson LLP[4] is a "legal entity" within the meaning of 18 U.S.C. § 1961(3). There is also no dispute Stern Thomasson LLP is a law firm actively engaged in the private practice of law and both Stern and Thomasson, individually, practice law on a full-time basis through

---

[4] Stern Thomasson LLP is erroneously sued herein as "Stern, Thomasson, LLC".

Stern Thomasson LLP, and the Matutes are their clients. Hence, Stern and Thomasson conduct the affairs of Stern Thomasson LLP. *SOMF Nos.* 1-3.

Where Defendants fail is in providing proof of any racketeering activity or that there is any pattern of such an activity.

### (i)    Pattern

A "pattern of racketeering activity" requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). There is no proof of *any* racketeering activity and, therefore, there is no proof of any pattern.

### (ii)    Racketeering Activity

Under the statutory definition, there are seven categories of activities which can constitute "racketeering activity." 18 U.S.C. § 1961(1). They are:

(A)    the following criminal acts if they are chargeable under State law and punishable by imprisonment for more than one year: murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled dangerous substance.

(B)    certain specified acts which are indictable under Title 18; namely, 18 U.S.C. §§ 175-178, 201, 229-229F , 471-473, 659, 664, 831, 891-894, 1028, 1029, 1084, 1341, 1343, 1344, 1351, 1425, 1426, 1427, 1461-1465, 1503, 1510, 1511, 1512, 1513, 1542, 1543, 1544, 1546, 1581-1592, 1831, 1832, 1951-1958, 1960, 2251, 2251A, 2252, 2260, 2312-2315, 2318, 2319, 2319A, 2320, 2321, 2341-2346, and 2421-2424.

(C)    an act indictable under 29 U.S.C. §§ 186 or 501(c);

(D)    bankruptcy or securities fraud, or involvements with controlled dangerous substances;

(E) an indictable act under the Currency and Foreign Transactions Reporting Act;

(F) an indictable act under the Immigration and Nationality Act; and

(G) a Federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B).

Defendants' have identified no facts to prove the commission of any of the seven categories of crimes. *SOMF No. 4.*

## B.   *Elements of a Claim under N.J.S.A. 2C:41-2.*

New Jersey adopted its own version of the RICO statute in 1981, codified at N.J.S.A. 2C:41-1 to -6.2. "[B]ecause the federal statute served as an initial model for our own, we heed federal legislative history and case law in construing our statute." *State v. Ball*, 141 N.J. 142, 156 (1995).

The New Jersey act criminalizes receiving income from a pattern of racketeering activity. N.J.S.A. 2C:41-2. It also provides for civil remedies. N.J.S.A. 2C:41-4.

Like the Federal statutes, the New Jersey act defines "racketeering activity" based on a lengthy list of crimes, and a pattern as requiring at least two racketeering activities. N.J.S.A. 2C:41-1(a) and (d). As with Defendants' Federal RICO claim, they failed to produce any evidence in discovery to prove any racketeering activity. *SOMF No. 4.*

**POINT II:**   **THERE ARE NO FACTS TO PROVE FRAUD.**

"The elements of common-law fraud are '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 147 (2015).

Defendants produced no evidence as to any element. *SOMF Nos. 6-9.* There is no proof as to whether any Movant misrepresented a fact knowing it was false with intent that others rely on it, or whether there was reasonable reliance and any resulting damage. *Id.*

**POINT III:**   **THERE ARE NO FACTS TO PROVE NEGLIGENCE.**

"[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages. The plaintiff bears the burden of establishing those elements." *Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 406 (2014) (citations and quotation marks omitted).

Defendants produced no evidence that any Movant owed any Defendant any duty of care and, if so, whether the duty was breached causing damaged. *SOMF Nos. 11-13.*

**POINT IV:    THERE ARE NO FACTS TO PROVE LEGAL MALPRACTICE.**

"The requisite elements of a cause of action for legal malpractice are: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." *Conklin v. Hannoch Weisman*, 145 N.J. 395, 416 (1996). There is no evidence of any attorney-client relationship between any Defendant and any Third-Party Defendant, a breach of any duty, or proximate causation. *SOMF Nos. 15-17.*

**POINT V:    THERE ARE NO DAMAGES.**

In addition to the lack of evidence to prove any liability, there is no evidence that Defendants suffered damages. *SOMF Nos. 5, 10, 14, & 18.*

Each of Defendants' common law counts (*i.e.*, for fraud, negligence, and legal malpractice) includes proximately caused damages as a necessary element. Similarly, both the Federal and New Jersey RICO statutes allow a person to sue only if "injured in his business or property by reason of a violation" of the statute. 18 U.S.C. § 1964(c); N.J.S.A. 2C:41-4(c). Consequently, Defendants bear the burden to prove damages.

In their Rule 26 Disclosures, Defendants stated:

> Computation of damage amounts has not commenced; except to the extent that unofficial and anonymous sources and the decision in *Gallego v Northland Group*, 102 F.Supp.3d 506 (SDNY 2015) indicate that the typical and perhaps average sham lawsuit settlement approximates

> $50,000 without victim's other costs and attorney's fees. In the case at hand, the settlement demand to an uninvolved attorney acting as a mediator was reported as $22,500.

*Stern Decl.*, Exhibit A.

None of Defendants' discovery responses (*Stern Decl.*, Exhibits N, M, and O) addressed damages. Thus, there is no evidence that any Defendant suffered any damages due to the conduct alleged in the Third-Party Complaint. *SOMF Nos. 5, 10, 14, & 18*. Consequently, even if the Court did not address any liability issue, summary judgment should be granted due to Defendants' lack of any damages.

**POINT VI:   DEFENDANTS' AFFIRMATIVE CLAIMS ARE RIPE FOR FINAL ADJUDICATION.**

Hoffman's musings do not make a cause of action. Just as the alchemist could not transform lead into gold, Hoffman cannot transform a licensed attorney's proper filing of consumer complaints against debt collectors into a conspiratorial RICO enterprise. His contortion is as baseless as asserting that an increase in drug arrests *is* the result of a governmental conspiracy. Relying exclusively on the number of consumer complaints filed, Hoffman conducted no investigation or analysis of any of debt collector defendants' underlying conduct or even the outcome of those cases.

But, consider the source. Hoffman teamed up with Barry S. Sussman, a law school graduate and serially-convicted felon. Rather than follow a virtuous life,

Sussman became a career con man.

More than thirty years ago, Sussman authored a how-to book for con men.[5] His manuscript, *I Scam … You Scam, Specific Methods for Defeating Bureaucratic Organizations*, was written while Sussman was serving a prison term for violating probation.[6]

In 1988, Sussman pled guilty before Judge Lechner for illegally acquiring more than 100 credit cards using fictitious names and devising a system of post office boxes and answering services to handle creditor inquiries.[7]

In 2003, the Federal Trade Commission obtained a temporary restraining order against Sussman and his cohorts for harassing and abusing consumers into making payments on alleged debts—including threatening criminal prosecution and imprisonment.[8] Judge Vazquez recently described it as "a nationwide extortion scheme tied to debt collection." *Winters v. Jones*, Civil Action No. 16-9020, 2018 U.S. Dist. LEXIS 3061, *7 (D.N.J. Jan. 8, 2018).

The FTC's case led to a precedential FDCPA decision, *FTC v. Check Inv'rs, Inc.*, 502 F.3d 159 (3d Cir. 2007). There, this Court had "permanently restrained

---

[5] https://www.nytimes.com/1988/09/25/nyregion/man-is-sentenced-in-a-fraud-scheme.html (accessed April 13, 2018).

[6] *Id.*

[7] *Id.*

[8] https://www.ftc.gov/news-events/press-releases/2003/05/new-jersey-debt-collectors-charged-illegally-threatening-arrest (accessed April 13, 2018).

and enjoined [Sussman] from engaging in debt collection activities or assisting others engaged in debt collection activities." *FTC v. Check Inv'rs, Inc*., No. 03-2115 (JWB), 2005 U.S. Dist. LEXIS 37199, *8 (D.N.J. July 18, 2005).

Hoffman enabled Sussman to disregard this Court's *permanent* proscription against assisting debt collectors by employing Sussman to work on this case and *Winters.* Sussman's disregard for this Court knows no bounds. Less than nine years ago, he was convicted of obstructing justice and theft of government property when he conned bank branch officers to give him access to $300,000 frozen by this Court at the behest of the FTC. *U.S.A. v. Barry Sussman*, Case 2:08-cr-00891-DRD (D.N.J.), at Doc. 57; *aff'd United States v. Sussman*, 709 F.3d 155 (3d Cir. 2013).

Just three years ago, this Court denied Sussman's motion for early termination of his supervised release because he continued to associate with disreputable characters and engage in consumer scams. Judge Debevoise explained:

> The Probation Office noted several circumstances that also weighed on the § 3553(a) factors. First, at the outset of supervision, Defendant was employed by Progressive Media Inc. where he was supervised by Ara Boyadjian. At an earlier time, Defendant was employed [*7] by G&L Financial Services, Inc., where his supervisor was Jack Boyadjian. Civil complaints were filed against that company and the Boyadjians for violation of the fair credit act. Recently, Defendant served in a position with United Credit Specialists (UCS). The Probation Officer's investigation disclosed numerous civil complaints of

> violation of the fair credit act against Defendant's
> employers and associated businesses.

*United States v. Sussman*, 2015 U.S. Dist. LEXIS 2295, \*6-7; 2015 WL 132543

(D.N.J. Jan. 8, 2015).

Despite being enjoined against assisting other debt collectors and his

persistent criminal history, Hoffman kept Sussman at his side throughout this case.

The Court's appearance records should reflect Sussman joining Hoffman at

virtually every in-person appearance and on every telephone call with the Court.

Around the time when Defendants were served, Hoffman's Complaint in

*Winters* made the news. Hence, it was no surprise Defendants called Hoffman as

an attorney appearing to be experienced in representing debt collectors.

Defendants cannot be blamed for the following the bad advice of their

licensed attorney; however, they *never* provided Hoffman with any facts to support

the same spurious and baseless claims Hoffman/Sussman made in *Winters.* Those

claims sprang not from a diligent lawyer's reasonable investigation, but rather

from Hoffman and Sussman's unfounded delusions that foxy consumer lawyers

outsmarted, deceived, and defrauded scores of dimwitted debt collectors and their

insurers and counsel into settlements—including class action settlements—which

were reviewed and approved by *this* Court.

The Hoffman/Sussman play was a deliberate, but poorly-conceived, sham

designed to scare honest Plaintiffs into abandoning their meritorious claims[9] and to shake down[10] Plaintiffs' lawyers who, representing Congressionally-sanctioned "private attorneys general," sought to enforce federal and state consumer protection statutes including the FDCPA. Congress enacted that statute because it was necessary to regulate an industry whose abusive practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Indeed, it is the very statute Sussman so blatantly violated that he was prosecuted and permanently barred from *ever* having anything to do with the debt collection industry and which ultimately landed him in prison (again).

Hoffman, however, provided Sussman cover: allowing Sussman to "assist[] others engaged in debt collection activities" notwithstanding this Court's injunction. Judge Vazquez expressed "real concerns" over Sussman's involvement in the *Winters* case, "and cannot fathom the reason why" due to the fact Sussman:

> has been convicted of felonies, including fraud, on multiple occasions and subject to a temporary restraining order sought by the Federal Trade Commission in 2003 for a nationwide extortion scheme tied to debt collection.

---

[9] In his unsuccessful motion to disqualify Plaintiffs' counsel, Hoffman argued a lawyer representing the Matutes would have dismissed the Matutes' claims when faced with RICO claims Hoffman had asserted. [Doc. 30-11 at 2.]

[10] Hoffman was obsessed with discovering the identity of the professional liability carrier insuring Plaintiffs' counsel even after being informed there was no coverage. Ultimately, Hoffman was denied access or *in camera* review. [Doc. 45.]

*Winters*, 2018 U.S. Dist. LEXIS 3061, *7.

This case is, in Hoffman's words, a "virtual clone"[11] of *Winters*, which only further underscores the impropriety of Sussman's continued involvement.

Judge Vazquez shut down the *Winters* case because Hoffman could not even plead the necessary elements of any cognizable claim. *Winters v. Jones*, Civil Action No. 16-9020, 2018 U.S. Dist. LEXIS 2645 (D.N.J. Jan. 8, 2018).

Here, Hoffman was given more than a year to come forward with facts—but there are none. Consequently, it is now time to bring closure to Defendants' meritless and spurious claims which have done nothing except to waste this Court's limited resources and permanently damage the reputations of Plaintiffs' counsel and their ability to practice law.

---

[11] *Stern Decl.,* Ex. M (page 3, ¶1); Ex. N (page 1, §c).

## CONCLUSION

For the foregoing reasons, Plaintiffs, Jorge Matute and Doris Matute, and Third-Party Defendants, Stern Thomasson LLP, Philip D. Stern, Esq., and Andrew T. Thomasson, Esq., respectfully request that summary judgment be granted dismissing the Counterclaim and Third-Party Complaint as a matter of law.

Respectfully submitted,

*Representing Plaintiffs, Jorge Matute and Doris Matute, and Third-Party Defendants, Stern Thomasson LLP and Andrew T. Thomasson, Esq.*

Dated: April 13, 2018

| *s/Philip D. Stern* |
| --- |
| Philip D. Stern |

Respectfully submitted,

*Representing Plaintiffs, Jorge Matute and Doris Matute, and Third-Party Defendants, Stern Thomasson LLP and Philip D. Stern, Esq.*

Dated: April 13, 2018

| *s/Andrew T. Thomasson* |
| --- |
| Andrew T. Thomasson |